In re The MARLIN OIL COMPANY, a Colorado corporation, d/b/a Sterling Well Service, EIN: 86–0625844, Debtor.

STUTZ, DYER, MILLER & DELAP, a partnership, Applicant,

v.

Larry L. SNODGRASS, Trustee of the Bankruptcy Estate of The Marlin Oil Company, Respondent.

Bankruptcy No. 85 B 07436 J.

United States Bankruptcy Court, D. Colorado.

Nov. 4, 1986.

Patricia D. McGraw, Fairfield and Woods, P.C., Denver, Colo., for trustee.

Jeremiah B. Barry, Stutz, Dyer, Miller & Delap, Denver, Colo., for Stutz, Dyer, Miller & Delap.

### MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER came before the Court on October 2, 1986, on the Motion for Re-

lief from Stay filed by the law partnership of Stutz, Dyer, Miller & Delap, and the Response thereto by Larry L. Snodgrass, Chapter 7 Trustee. This Court has jurisdiction over the motion pursuant to 28 U.S.C. §§ 1334 and 157.

The Applicants, a partnership of attorneys, performed legal services for the Debtor, Marlin Oil Company, in connection with the case of *Larry L. Snodgrass, Trustee v. Peoples Natural Gas*, Civil Action No. 85–JM–209, now pending in the United States District Court for the District of Colorado. They seek a modification of the automatic stay to allow them to file in that case a notice of attorneys' lien and motion for approval of attorneys' lien. They assert that the automatic stay does not apply to an attorneys' lien because the statute, § 12–5–119 C.R.S.1973, provides that upon filing of notice of the lien, the lien relates back to the time the attorneys commenced the work. This statute, they argue, limits the Trustee's avoiding powers under § 546(b) of the Bankruptcy Code, which directs that such powers are subject to "any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." 11 U.S.C. § 546(b). Therefore, § 362(b)(3) of the Code, which states that the automatic stay does not apply to "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under § 546(b)," exempts their proposed action from the protection of the automatic stay.

The Trustee disagrees with the Applicant's interpretation of the Colorado attorneys' lien statute, and contends that it does not indicate relation back in the manner of a mechanic's lien. He states that the lien does not fall within the exemption from stay created by § 546(b) and § 362(b)(3), and may be avoided pursuant to § 545(2).

■ The first question confronting the Court is whether the act of filing the notice of attorneys' lien and the motion for approval of attorneys' lien fit within the exemption from stay accorded by § 546(b) and § 362(b). The key to that issue is whether the Colorado statute provides for "relation back" of perfection. In *Bender & Treece, P.C. v. Storage Technology Corporation*, 45 B.R. 363, 364 (Bankr.Colo. 1985), this Court held "[p]erfection of an attorneys' lien as to third parties is not retroactive as to trigger § 546(b) and exempt the act of filing from the automatic stay under § 362(b)(3)." After careful review of the case law, the Court finds nothing to contradict this holding.

The Colorado attorneys' lien statute provides as follows:

All attorneys—and counselors-at-law shall have a lien on any money property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client. In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditors, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees. Such notice of lien shall not be presented in any manner to the jury in the case in which the same is filed. Such lien may be enforced by the proper civil action

Section 12–5–119, C.R.S. 1973.

As between the attorney and the client, the lien attaches when work commences and remains perfectly valid without a no-

tice of lien being filed. *Dolan v. Flett*, 41 Colo.App. 40, 42, 582 P.2d 694 (1978). Two major cases, however, address the issues of priority of an attorneys' lien as it applies to third parties.

In *Collins v. Thuringer*, 92 Colo. 433, 21 P.2d 709 (1933), the Colorado Supreme Court reversed a trial court judgment granting a garnishment priority over an attorney's lien. In that case, a judgment for $697.95 was entered against Edyth Villaume, later known as Edith Thuringer, in favor of one W.R. Cline, on February 1, 1923. On December 30, 1929, Edith Thuringer obtained a judgment for $700.00 against Charles Thuringer, with W. Penn Collins acting as her attorney. Following the $700.00 judgment, W.R. Cline filed a garnishment against Charles Thuringer and on January 11, 1930, a judgment of garnishment for $740.00 was entered against Thuringer. On January 7, 1930, Collins filed his statement of attorneys' lien in the previous case. On January 30, 1930, the garnishee, Charles Thuringer, filed a petition seeking determination of the rights of all persons claiming interests in the judgment obtained against him by Edith Thuringer.

Interpreting the former attorneys' lien statute, the Colorado Supreme Court stated:

> The provision in section 6010, Compiled Laws of 1921, concerning notice is intended to give constructive notice, so as to preserve the attorneys' lien in the event that the judgment debtor should settle the judgment without having actual notice of the lien claim, or some third person, without having such actual notice, should acquire an interest in the judgment or in its proceeds.

*Collins, supra*, at 436, 21 P.2d 709. However, the Court goes on to note that a garnishment proceeding cannot overcome prior valid and *bona fide* interests in a debt of property, and that a garnishment's priority over other liens or claims ordinarily depends on whether it is prior in time. *Id.*, citing *Clatworthy v. Ferguson*, 72 Colo. 259, 264, 210 Pac. 693 (1922), and 28 Corpus

Juris 255. Most importantly, the Court found that a plaintiff in garnishment "does not stand in the position of a purchaser in good faith and for value, but is in no better position then a purchaser or an assignee with notice." *Id., citing* 28 Corpus Juris 255.

Therefore, the reason the Court held the attorneys' lien superior to the garnishment, even though the notice of attorneys' lien was filed after the garnishment, was because the plaintiff in garnishment was deemed to have notice of the already-existing lien between the attorney and the client. The holding turns upon the presumption of notice to a certain class of lien claimants, namely plaintiffs in garnishment.

The Court did not hold that the former attorneys' lien statute acts retroactively upon the giving of notice. Indeed, it emphasized the statute's function of providing constructive notice, and recognizes that an attorneys' lien would be lost if an innocent third person, without notice, should acquire an interest in a judgment, or if a judgment debtor, without notice of the attorney's intent to enforce his lien, makes a *bona fide* settlement of the lien. *Collins, supra*, 92 Colo. at 436, 21 P.2d 709, *citing, Davidson v. Board of County Commissioners of La Plata County*, 26 Colo. 549, 555, 59 Pac. 46 (1899), *Fillmore v. Wells*, 10 Colo. 228, 235, 15 Pac. 343 (1887). The Court's findings have nothing to do with relation back, but merely recognize that "[a]s Cline was in no better position than a purchaser or assignee with notice, the fact that at the time of the garnishment Collins had not filed a notice pursuant to the statute did not make the garnishment prior to the attorney's lien." *Id.*, at 436–437, 21 P.2d 709.

Similarly, the court in *County Commr's v. Berkeley Village*, 40 Colo.App. 431, 580 P.2d 1251 (1978), upheld the priority of an attorneys' lien claim over a lien perfected before the filing of notice of the attorneys' lien, but not on the basis that the attorneys lien operated retroactively. In a dispute over priority between intervenors in a condemnation action who claimed an interest

in the condemnation proceeds, the trial court found the priority to be: first, Clark, Martin, & Pringle, the law firm filing the attorneys' lien; second, U.S. Life Insurance Company of Texas; third, Advance Mortgage Corporation; and fourth, United Bank of Denver. *Id.*, at 433, 580 P.2d 1251. The Court of Appeals affirmed the priority of Clark, Martin & Pringle, and reversed as to the other priorities. Clark, Martin & Pringle, representing the partnership who owned the land sought to be condemned, entered its appearance in the condemnation action on February 16, 1973. *Id.*, at 434, 580 P.2d 1251. On March 27, 1973, the partnership assigned a portion of its interest in the condemnation proceeds to U.S. Life. *Id.* On January 1, 1975, the partnership assigned all its interest in the condemnation proceeds to Advance Mortgage. *Id.*, at 435, 580 P.2d 1251. On March 11, 1975, the partnership assigned a portion of its interest in the condemnation proceeds to United Bank. *Id.* On November 25, 1975, Clark, Martin & Pringle filed a notice of attorneys' lien. *Id.*, at 434, 580 P.2d 1251.

The Court held the assignment of condemnation proceeds was governed by the Uniform Commercial Code. United Bank thus took priority over Advance Mortgage, whose financial statement was filed after United Bank's, and over U.S. Life, who never filed a financing statement. *Berkeley Village, supra*, at 438, 580 P.2d 1251. However, under § 4-9-104 C.R.S.1973, the Uniform Commercial Code does not apply to statutory liens, such as attorneys' liens. *Id.* The Court found even though Clark, Martin & Pringle's lien was not filed until after the assignment to United Bank, United Bank was on inquiry notice as to the attorneys' lien because it knew the partnership was in financial trouble and was represented by attorneys. *Id.*, at 439, 580 P.2d 1251. The court stated:

Accordingly, inasmuch as the lien statute constitutes notice of the lien, *Collins v. Thuringer, supra*, we hold that when as [sic] assignee of a judgment, or the proceeds thereof, knows at the time of taking such assignment that the assignor's financial position is such that his attorney in the action may have to rely on the proceeds to collect his fee, the assignee is under a duty to inquire as to whether the attorney intends to rely on his lien, failing which the assignee cannot claim to be a good faith purchaser and takes subject to the lien.

*Id.*

The holding in this case is based upon United Bank's duty to inquire when it knew of the partnership's financial distress and representation by attorneys. It is not based upon an interpretation of the attorneys' lien statute as applying a lien retroactively upon notice. This case may indicate that it is difficult to show lack of notice of an attorneys' lien, but it does not stand for the proposition that an attorneys' lien "relates back" in the manner of a mechanic's lien, upon the filing of notice.

The Applicants argue that the granting of a "first lien" by § 12-5-119 means that the lien must "relate back". Careful reading of the provision shows such a position to be unfounded. The provision states that the notice filed by the attorney acts as notice to third persons of the attorneys' first lien on the judgment. That is, third persons receive notice of the first lien that exists from the time of commencement of work as between the attorney and his client, and so cannot claim to be *bona fide* purchasers or assignees without notice. This does not lead to the conclusion that as to a taker without notice, an attorney acquires a first lien upon the filing of notice. The emphasis placed by the case law upon the necessity of notice for the lien to apply to third parties supports this interpretation of the statute. In addition, had the Legislature intended for attorneys' liens to "relate back", it could have employed specific language to that effect, like that appearing in the mechanic's lien statute. *See*, § 38-22-106(1) C.R.S.1973. It is not for a court to infer meanings from this statute which have no basis in the language of the statute.

The Colorado attorneys' lien statute therefore does not fall within the exemp-

tion from stay of §§ 546(b) and 362(b), and the automatic stay applies. The question remaining to be determined, then, is whether the Applicants should be accorded relief from stay.

■ An attorneys' lien is not extinguished when a client files bankruptcy. *In re Life Imaging Corp.*, 31 B.R. 101, 102 (Bankr.Colo.1983). Further, an attorneys' lien is statutory rather than judicial, so the debtor cannot avoid it under § 522(f) of the Code. *In re Ranes*, 31 B.R. 70, 72 (Bankr. Colo.1983).

■ However, the Trustee could avoid the lien pursuant to § 545(2), which states:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 545(2). The Trustee, unlike the plaintiff in garnishment in *Collins, supra,* possesses the rights of a *bona fide* purchaser as of the commencement of the case with respect to the attorneys' lien. Since the attorneys' lien in this case was neither perfected nor enforceable against a *bona fide* purchaser as of the date of filing the petition, the Trustee could avoid the lien in this case. *See, Bender & Treece, supra,* at 365.

As in the *Bender & Treece* case, the Court can find no cause to modify the stay to permit the Applicants in this case to file notice. Such an action will merely lead to the Trustee filing an adversary action to avoid the lien, and result in increased expense to the estate and delay to creditors. *See, Bender & Treece, supra,* at 365. It is, therefore,

ORDERED that the Motion for Relief from Stay filed by Stutz, Dyer, Miller & Delap, a partnership, is denied.

FURTHER ORDERED that each party shall bear its own costs with respect to this motion.