COTTONWOOD HILL, INC., a
Colorado corporation,
Plaintiff,

v.

Ronald J. and Clara E. ANSAY,
Defendants and Third Party
Plaintiffs.

and concerning:

KNIGHT & LESHER, P.C., formerly
attorneys for Ronald J. and Clara
E. Ansay, Lienholder–Appellant,

v.

FIRST COLORADO BANK & TRUST,
N.A., Intervenor–Appellee.

No. 86CA0821.

Colorado Court of Appeals,
Div. I.

Feb. 16, 1989.

Rehearing Denied March 16, 1989.

Certiorari Denied July 3, 1989.

Wood, Ris & Hames, P.C., Eugene S. Hames, Denver, for lienholder-appellant.

Roath & Brega, P.C., Michael McIntyre, Denver, for intervenor-appellee.

Opinion by Judge PLANK.

Lienholder, Knight & Lesher, P.C. (Lesher), appeals the trial court's determination that its attorney's lien under § 12–5–119, C.R.S. (1985 Repl.Vol. 5) does not have priority over the interest of intervenor, First Colorado Bank & Trust, N.A. We affirm.

On September 23, 1983, plaintiff, Cottonwood Hill, Inc., gave notice that it intended to exercise its option to purchase property owned by defendants, Ronald J. and Clara E. Ansay, pursuant to a lease with option to purchase. Defendants refused to convey the property because of a dispute over the purchase price. Plaintiff sued to compel specific performance of the sale of the property. Lesher represented the defendants in the specific performance action pursuant to a written fee agreement dated September 30, 1983.

On April 6, 1984, intervenor loaned defendants $670,000. The debt was evidenced by a promissory note, which was secured by a first deed of trust against the property that was the subject of the specific performance action. The deed of trust was filed of record on April 18, 1984. Lesher assisted the defendants in obtaining the financing from intervenor.

On May 24, 1984, the trial court entered a specific performance order requiring the property to be sold for $575,000. In anticipation of the closing on the property, the intervenor made arrangements for its deed of trust to be released.

The closing, however, did not take place because the defendants appealed the trial court's ruling. The defendants also terminated the services of Lesher and retained other counsel to handle the appeal.

Defendants' new counsel by inadvertence or mistake released intervenor's deed of trust on July 23, 1984, even though the closing had not taken place. Three days later, plaintiff deposited into the court registry $545,000, which was the remaining balance of the $575,000 purchase price determined by the trial court.

On August 15, 1984, the trial court clarified its order of May 24, 1984, and ordered that the closing be held immediately. Before the closing could occur, a stay was issued by this court.

Intervenor testified that it was unaware that the deed of trust had been released until the end of August or the first part of September 1984. On September 5, 1984, defendants executed another deed of trust against the property for the benefit of intervenor and it was recorded on September 6, 1984. Intervenor also obtained an assignment from the defendants of the funds on deposit in the court registry on September 10, 1984. It was not until September 20, 1984, that Lesher filed its attorney's lien with the court.

On June 27, 1985, this court affirmed the trial court's final order dated August 15, 1984, 709 P.2d 62, but the closing on the property did not occur until December 20, 1985. Pursuant to a stipulation, it was agreed that, at the closing, the proceeds of the sale of the property, less $34,000 and certain closing costs, would be distributed to intervenor. The $34,000 was to be retained pending judicial resolution of priority to those funds as between intervenor and Lesher.

On March 25, 1986, the trial court held, as an equitable principle, that the rights and interests of the parties in this case were fixed as of August 15, 1984, by the final order of the trial court, which had been subsequently affirmed by this court. It then ruled that the intervenor had priority to the $34,000, as of August 15, 1984.

Lesher contends its attorney's lien on the funds is superior to the interest of the intervenor. We reject each of the arguments regarding priority asserted by Lesher.

I.

The attorney's charging lien is statutory in nature and is governed by § 12–5–119, C.R.S. (1985 Repl.Vol. 5). *See In re Storage Technology Corp.*, 45 B.R. 363 (Bankr. D.Colo.1985). The statute requires that before an attorney can enforce the lien against third parties, he must give notice pursuant to the statute. *In re Marriage of Berkland*, 762 P.2d 779 (Colo.App.1988); *see People ex rel. MacFarlane v. Harthun*, 195 Colo. 38, 581 P.2d 716 (1978); *Dolan v. Flett*, 41 Colo.App. 40, 582 P.2d 694 (1978); § 12–5–119, C.R.S. (1985 Repl.Vol. 5).

Here, intervenor initially recorded its deed of trust on the property on April 18, 1984, and recorded its replacement deed of trust on September 6, 1984. Lesher did not attempt to perfect its lien as to third parties until September 20, 1984, when it filed its notice of attorney's lien with the court.

Lesher, however, relies on *Board of County Commissioners v. Berkeley Village*, 40 Colo.App. 431, 580 P.2d 1251 (1978), and *Collins v. Thuringer*, 92 Colo. 433, 21 P.2d 709 (1933) in an attempt to persuade us that: (1) its lien priority related back to the time the law firm was retained on September 30, 1983, and (2) intervenor had a duty to inquire about Lesher's lien. This reliance is misplaced.

In order for the lien to apply to third parties, the case law has emphasized that the attorney's lien claimant must give notice. *See People ex rel. MacFarlane v. Harthun, supra; In re Marriage of Berkland, supra;* and *Dolan v. Flett, supra.* The claimant's priority as to third parties is then fixed as to the date of proper notice.

Thus, the attorney's lien priority as to third parties does not relate back to the time the attorneys commenced work. *In re Marlin Oil Co.,* 67 B.R. 284 (Bankr.D.Colo.1986).

Furthermore, had the general assembly intended for attorneys' liens to "relate back," or have "super priority" it could have chosen specific language to that effect, like the language appearing in the mechanics' lien and tax lien statutes. *See* § 38–22–106(1), C.R.S. (1982 Repl.Vol. 16A); § 39–1–107(2), C.R.S. (1982 Repl.Vol. 16B). We cannot infer a meaning of the attorney's lien statute which has no basis in the language of the statute.

Even though *Collins v. Thuringer, supra,* and *Board of County Commissioners v. Berkeley Village, supra,* are attorneys' lien cases that deal with third-person priorities, a careful review of the holdings in those cases reveals fact patterns regarding notice that are not present in the case before us. We believe these cases should be narrowly construed.

The reason the court in *Collins* held an attorney's lien superior to a garnishment, which had been filed before the notice of attorney's lien was filed, was because the plaintiff in garnishment was deemed to have notice of the lien between attorney and client. Thus, "the holding turns upon the presumption of notice to a certain class of lien claimants, namely plaintiffs in garnishment." *In re Marlin Oil Co., supra.*

In *Board of County Commissioners v. Berkeley Village, supra,* the court held that another class of lien claimants, specifically, assignees of a judgment or the proceeds thereof, who know "at the time of taking such assignment that the assignor's financial position is such that his attorney in the action may have to rely on the proceeds to collect his fee ... is under a duty to inquire as to whether the attorney intends to rely on his lien, failing which the assignee cannot claim to be a good faith purchaser and takes subject to the lien."

Here, intervenor was neither a plaintiff in garnishment nor an assignee of condemnation proceeds. Intervenor was the holder of a deed of trust on real property before the sale proceeds for the property were deposited with the court and before Lesher gave notice of its attorney lien.

The situation, therefore, is governed by § 38–35–109(1), C.R.S. (1988 Cum.Supp.), which provides:

"All deeds, ... affecting the title to real property ... may be recorded in the office of the county clerk and recorder of the county where such real property is situated. No such unrecorded instrument or document shall be valid as against any class of persons with any kind of rights who first records, except between the parties thereto and such as have notice thereof...."

 This statute has been construed to give priority to recorded instruments affecting title to real property except between the parties thereto and such as have notice thereof. *See Enerwest, Inc. v. Dyco Petroleum Corp.,* 716 P.2d 1130 (Colo.App. 1986). Facts sufficient to put one upon a duty of inquiry are sufficient constructive notice to satisfy the notice requirement of § 38–35–109(1) C.R.S. (1988 Cum.Supp.) *Enerwest, Inc. v. Dyco Petroleum Corp., supra.*

 Here, intervenor's uncontradicted testimony indicated that it had no notice of Lesher's lien prior to September 20, 1984, when Lesher filed its notice of lien with the court. Although intervenor knew about the litigation, defendants had not indicated to intervenor that they owed Lesher money until after the notice of lien was filed with the court. In fact, defendants' financial statements did not indicate any arrearages to Lesher until September or November of 1985. Defendants also had made monthly payments to Lesher until after the loan was made. Thus, there is no showing in the record that the intervenor had knowledge at the time it recorded its deed of trust that Lesher's only probable source of payment of its fees was the proceeds in question here. *See Board of County Commissioners v. Berkeley Village, supra.*

Furthermore, had Lesher wished to perfect its attorney's lien prior to intervenor's deed of trust attaching to the property on April 18, 1984, it certainly had ample oppor-

tunity to do so. Lesher knew or should have known that intervenor would file a deed of trust against the property since it assisted defendants in obtaining the loan from intervenor. Lesher remained inactive at its own peril.

■ A holder of a prior perfected deed of trust without actual or constructive notice of an attorney's lien, such as intervenor, has priority over an attorney's charging lien. *See Enerwest, Inc. v. Dyco Petroleum Corp., supra; In re Marriage of Mann,* 697 P.2d 778 (Colo.App.1984).

## II.

Lesher next asserts that intervenor had already lost its lien on the property as of August 15, 1984. We disagree.

■ An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt, or is declared by a court of equity out of general considerations of justice as applied to the relations of the parties and the circumstances of their dealings. *Fort Lupton State Bank v. Murata,* 626 P.2d 757 (Colo.App.1981); *see Sunvara Land Co. v. Fiduciary Trust Co.,* 150 Colo. 143, 371 P.2d 431 (1962).

■ Here, there is sufficient evidence to support the trial court's finding that the intervenor had a lien as of August 15, 1984, because there were special circumstances compelling the intervention of equity. The promissory note executed by defendants in favor of the intervenor on April 6, 1984, specifically stated that it was secured by the property. The related deed of trust was subsequently recorded against the property twelve days later. Lesher assisted in the loan transaction without revealing its later asserted lien position. Defendants' attorneys, not the intervenor, mistakenly released the deed of trust on July 23, 1984. Intervenor had given the defendants' attorneys the release of deed of trust in order to comply with the court ordered closing. When intervenor discovered its deed of trust had been released, the intervenor demanded and defendants immediately consented to executing and

having recorded another deed of trust against the property.

The sufficiency of all evidence and conclusions therefrom are within the province of the trial court and may not be disturbed on appeal unless clearly erroneous. *People in Interest of M.S.H.,* 656 P.2d 1294 (Colo. 1983). The record on this issue supports the trial court's finding of intervenor's lien on August 15, 1984.

■ An equitable lien is good against all persons who acquire an interest with knowledge or notice of the lien. *Valley State Bank v. Dean,* 97 Colo. 151, 47 P.2d 924 (1935). Thus, since Lesher had knowledge of the deed of trust filed against the property in April of 1984, which, along with special circumstances, gave rise to the equitable lien, intervenor's equitable lien was good against Lesher.

## III.

■ Lesher's further argument, that the deed of trust attached only to the land and not to funds held by the trial court, is without merit. If a trust deed beneficiary's consent to a sale of encumbered property is not absolute, but is given on an express condition that the third party receiving the proceeds would deliver the proceeds to the trust deed beneficiary, then the lien is not waived on the proceeds. *See Sterling Community Federal Credit Union v. Wilcox Skelly Service,* 28 Colo.App. 278, 472 P.2d 203 (1970).

In this case, intervenor's uncontradicted testimony was that it agreed to release its lien upon the express understanding that it would receive the proceeds in exchange for releasing its lien. Thus, intervenor's lien was not extinguished.

## IV.

■ Lesher also contends that because intervenor's deed of trust listed the lease with option to purchase among the exclusions from warranty of title, intervenor could not acquire any interest in the purchase money deposited with the court. This contention is also incorrect.

A similar argument was rejected in *Enerwest, Inc. v. Dyco Petroleum Corp., supra.* There, the court held that it is presumed that a party conveying property by deed intends to convey his entire interest unless a portion of that interest is expressly excepted from the conveyance. The court further stated that a limitation upon the warranty of title is not such an express exception.

Here, while there was a limitation upon the warranty of title for the lease with option to purchase, there was no exception from the trust conveyance for the lease with option to purchase. Thus, the warranty limitation did not extinguish intervenor's right to the purchase money.

### V.

Finally, because we base our decision on the strength of intervenor's deed of trust in evaluating the relative priorities in this case, we need not address Lesher's contentions concerning intervenor's subsequent acquisition of an assignment of the proceeds.

JUDGMENT AFFIRMED.

PIERCE, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

I am unable to distinguish in any significant manner the factual basis of this case from those in *Board of County Commissioners v. Berkeley Village*, 40 Colo.App. 431, 580 P.2d 1251 (1978) and *Collins v. Thuringer*, 92 Colo. 433, 21 P.2d 709 (1933).

In *Board of County Commissioners v. Berkeley Village* we held that § 12-5-119, C.R.S., constitutes constructive notice of the lien when an assignee of a judgment or the proceeds thereof knows at the time of taking such assignment that the assignor's financial position is such that the assignor's attorney in the action may have to rely on the proceeds to collect his fee. Moreover, we held that the assignee is under a duty to inquire whether the attorney intends to rely on his lien, and failing such

inquiry, the assignee cannot claim to be a good faith purchaser and must take subject to the lien.

Further, in *Collins v. Thuringer, supra,* the supreme court held that the judgment creditor, a plaintiff in garnishment, was in no better position than a purchaser or assignee with notice and that, although the attorney had not filed a notice pursuant to the statute before the garnishment, such factor did not make the garnishment prior in time to the attorney's lien.

Hence, since the bank here proceeded with actual knowledge of Lesher's representation of the Ansays, it had a duty to make inquiry whether a lienable claim might be made. *See Enerwest, Inc. v. Dyco Petroleum Corp.,* 716 P.2d 1130 (Colo.App.1986).

*In re Marriage of Berkland,* 762 P.2d 779 (Colo.App.1988) is of no help to the bank. Contrary to the ·circumstances there, it had actual notice of the lienable claim of Lesher and stands in the shoes of the defendants.

I would therefore reverse and remand to the trial court with instructions to enter judgment granting the Lesher's lien priority over the bank's lien.