Ray TIGER, Plaintiff–Appellee
and Cross–Appellant,

v.

Joe ANDERSON, a/k/a Joseph A.
Anderson, Defendant–Appellant
and Cross–Appellee,

and

Richard D. Barrett and Frances
Sperl, Defendants.

No. 97CA0625.

Colorado Court of Appeals,
Div. IV.

June 11, 1998.

Rehearing Denied July 9, 1998.

Certiorari Denied May 10, 1999.

Osgood, Simpson and Harris, L.L.C., Steven E. Harris, Boulder, Colorado, for Plaintiff–Appellee and Cross–Appellant

Joe Anderson, a/k/a Joseph A. Anderson, Pro Se.

Opinion by Judge RULAND.

Defendant, Joseph A. Anderson, appeals from the trial court's judgment setting aside as fraudulent conveyances the transfer of two properties. Plaintiff, Ray Tiger, cross-appeals from the trial court's refusal to determine whether Anderson had an ownership interest in one of the properties at the time of the conveyance and whether defendant Richard D. Barrett was entitled to a lien as to that property. We reverse and remand for further proceedings.

The record reflects that Anderson became Barrett's surrogate father from the time he was twelve years old until he reached adulthood. It is undisputed that the parties maintained a close relationship thereafter.

According to the evidence presented by defendants, as of the fall of 1990 Barrett required additional living space for his family. He learned that a single family residence was in foreclosure and asked for Anderson's assistance in acquiring the residence. Barrett also wished to acquire an unimproved lot that was located behind the residence.

At this time, the foreclosing lender had acquired a certificate of purchase dated February 29, 1990, at a public trustee's sale of the residence. The lender agreed to assign the certificate to Anderson for $62,000, which Anderson paid.

Following expiration of the applicable redemption period, Barrett and his family moved into the residence around January 1991. During that same month, Anderson acquired title to the adjacent lot.

On July 15, 1991, Anderson executed two quitclaim deeds in favor of Barrett for the adjacent parcels of real estate referred to as the "House" and the "Lot." These were recorded by Barrett on May 1, 1992, and September 25, 1992, respectively. However, because of litigation with the former owners regarding their right of redemption, the public trustee's deed to Anderson for the House was not issued until February 1992.

On January 4, 1993, Tiger recorded a transcript of a foreign judgment against Anderson in the county where the properties were located. That judgment arose from prior litigation in California among Anderson, Tiger, and various third parties that was commenced in 1989 and exposed Anderson to liability in excess of $2 million. In 1992, that litigation resulted in a judgment against Anderson in favor of Tiger for almost $300,000.

Thereafter, on March 1, 1994, Barrett conveyed the properties by quitclaim deeds to defendant Frances Sperl, and the deeds were recorded that day.

On January 17, 1996, Tiger filed this action seeking to have the Anderson and Barrett conveyances set aside under the Colorado Uniform Fraudulent Transfer Act, § 38–8–101, et seq., C.R.S.1997. Following a bench trial, the court ruled that the July 1991 conveyances to Barrett were fraudulent under § 38–8–105(1)(b), C.R.S.1997, as that term is defined in the Act, and thus ineffective as to Tiger's lien. Further, the court concluded that Sperl was not a transferee for value or a bona fide purchaser without notice and, thus, the transfers to her should also be deemed fraudulent.

However, the court also found that because Barrett had given Anderson $30,000 to acquire the parcels, Barrett was entitled to a lien against the parcels in that amount under § 38–8–109(4), C.R.S.1997.

## I.

Anderson first contends that the trial court erred in failing to find that the statute of limitations barred Tiger's claim. We conclude that the trial court incorrectly interpreted the applicable statute and that additional proceedings are required to resolve this contention.

As pertinent here, § 38–8–110(1)(b), C.R.S. 1997, provides that a complaint alleging that

a conveyance of real property should be set aside as fraudulent must be filed within four years after the "transfer" was made.

Section 38–8–107(1)(a)(I), C.R.S.1997, provides that a transfer of real property is made:

[W]hen the transfer is so far perfected that a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee. . . .

Thus, here, the transfer would be perfected at the time a good faith purchaser from Anderson could acquire an interest in the property that is superior to the interest Barrett acquired from Anderson.

■■■ In Colorado, a party in open and exclusive possession of real estate under an apparent claim of ownership gives notice of the occupant's legal and equitable claims. *Yates v. Hurd,* 8 Colo. 343, 8 P. 575 (1885). As a result, the failure of a prospective purchaser to make appropriate inquiry of a party in possession operates to preclude that person from being a good faith purchaser. *See Colburn v. Gilcrest,* 60 Colo. 92, 151 P. 909 (1915); *see also Cohen v. Thomas & Son Transfer Line, Inc.,* 196 Colo. 386, 586 P.2d 39 (1978).

Accordingly, and contrary to the trial court's conclusion, the recordation of the deeds from Anderson to Barrett in 1992 is not dispositive in determining the date of the transfer. Instead, the issue whether Barrett had an enforceable legal or equitable claim to ownership of the House and Lot in 1991 must be examined and resolved.

And, this claim may be predicated upon an unrecorded and oral agreement from Anderson to acquire record title and then convey the parcels to Barrett. *See McPherrin v. Fair,* 57 Colo. 333, 141 P. 472 (1914) (a party who orally agrees to loan the money for, purchase, and acquire title to real estate for another is obligated under a resulting trust to convey title to the intended grantee). Finally, the statute of frauds does not apply to the transaction. *Vandewiele v. Vandewiele,* 110 Colo. 556, 136 P.2d 523 (1943).

Otherwise, as here, a judgment creditor might secure ownership rights under the Act which are not available to any other purchaser of property who fails to make inquiry of the party in possession. *See In re Gulino,* 779 F.2d 546 (9th Cir.1985).

Inasmuch as additional findings are required addressing the nature and extent of Barrett's claim, and thus the notice provided to any good faith purchaser in 1991, we do not address Anderson's contention that the trial court erred in not determining that the property was held in trust for the benefit of Barrett. These issues require evidentiary findings by the trial court. *See Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979).

In sum, if Barrett had enforceable legal or equitable rights to acquire title to the parcels through Anderson in 1991, his exclusive possession gave notice of those rights, and thus, the statute of limitations commenced as of the date he took possession.

## II.

■■■ We reject Anderson's contention that the trial court erred in finding that, for purposes of § 38–8–105(1)(b)(I), C.R.S.1997, his remaining assets were unreasonably small in relation to the transaction with plaintiff without evidence as to his net worth. The record reveals that Anderson himself testified about his net worth at trial, stating that he had approximately $785,000 to $800,00 in assets at the time. Hence, because evidence of Anderson's net worth was presented and because his exposure to liability was far in excess of this amount, we perceive no error in the court's finding.

## III.

■■■ Lastly, Anderson contends that the trial court erred in finding that he had received only $30,000, rather than $50,000, from Barrett and that such amount was consistent with the reasonable value of the properties. We are not persuaded.

■■■ Determinations as to the credibility of witnesses and the weight to be afforded the evidence are issues committed to the sound discretion of the trial court as the trier of

fact. Its findings must be accepted on review unless they are so clearly erroneous as not to find support in the record. *Page v. Clark, supra.*

Here, the amount of money that Barrett had given Anderson over the years was disputed, the estimates ranging from $20,000 to $50,000. Hence, the court's resolution of this conflict is binding on this court.

## IV.

 With reference to Tiger's cross-appeal, he first contends that the trial court erred in not determining whether Anderson had an ownership interest in the home on the date he signed the quitclaim deed to Barrett and, thus, whether Barrett can claim any lien based upon that ownership. We disagree.

Based upon the pleadings and pretrial disclosures, the trial court properly concluded that this issue had not been presented for resolution during trial. The court declined to allow an amendment to the pleadings given the objection by defendants.

We conclude that the trial court acted within its discretion in declining Tiger's request to amend the pleadings to include that issue. C.R.C.P. 15(b); *see Lyons v. Teamsters Local Union No. 961,* 903 P.2d 1214 (Colo.App.1995).

We have considered and are unpersuaded by Tiger's other contentions relative to the court's findings.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Judge NEY and Judge VOGT concur.